187 F.3d 333 (3rd Cir. 1999)
 KELVIN X. MORRIS, NO. AS-1924, Appellant
v.
MARTIN HORN, COMMISSIONER, PENNSYLVANIA DEPARTMENT OF CORRECTIONS; JAMES S. PRICE, SUPERINTENDENT OF THE STATE CORRECTIONAL INSTITUTION AT GREENE; AND JOSEPH MAZURKIEWICZ, SUPERINTENDENT OF THE STATE CORRECTIONAL INSTITUTION AT ROCKVIEW
 No. 98-9008
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued: April 15, 1999
Filed August 9, 1999
Amended August 25, 1999
 
 On Appeal From the United States District Court For the Eastern District of Pennsylvania (D.C. Civ. No. 97-cv-06635) District Judge: Honorable Jan E. DuBois[Copyrighted Material Omitted]
 ROBERT BRETT DUNHAM, ESQUIRE, STUART B. LEV, ESQUIRE (ARGUED), Defender Association of Philadelphia, Federal Court Division, 437 Chestnut Street, Suite 510, Philadelphia, PA 19106, Counsel for Appellant
 PETER J. GARDNER, ESQUIRE (ARGUED), Assistant United States Attorney, DONNA G. ZUCKER, ESQUIRE, Chief, Federal Litigation, RONALD EISENBERG, ESQUIRE, Deputy District Attorney, Law Division, ARNOLD GORDON, ESQUIRE, First Assistant District Attorney, LYNNE ABRAHAM, ESQUIRE, District Attorney, Philadelphia District Attorney's Office, 1421 Arch Street, Philadelphia, PA 19102, Counsel for Appellees
 Before: BECKER, Chief Judge, GREENBERG and COWEN, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Chief Judge.
 
 
 1
 Kelvin X. Morris, a death-sentenced prisoner, seeks a Certificate of Appealability (CAPP) so that he can challenge the District Court's refusal to give him a form of Rule 60(b) relief that would operate in an unusual way upon the federal habeas corpus proceedings pending in the District Court. The District Court dismissed Morris's habeas petition because he had not exhausted state remedies on all of his claims; his second Pennsylvania Post Conviction Relief Act (PCRA) petition was still pending in state court.
 
 
 2
 The District Court, in an apparent effort to protect Morris against the possibility that any renewed federal habeas petition (after disposition of his second PCRA) would ultimately have to be dismissed as untimely if his second PRCA were to be dismissed as untimely, appended to its order of dismissal a proviso permitting Morris to file an amended petition upon exhaustion that would relate back to the filing date of the initial petition. Morris did not appeal the dismissal order, but the Commonwealth of Pennsylvania did. This Court dismissed the Commonwealth's appeal for lack of standing, whereupon Morris filed the motion that now concerns us: a Rule 60(b) motion to alter or amend the judgment to provide that the habeas petition be put on the District Court's Suspense Docket rather than be dismissed. The District Court denied this motion.
 
 
 3
 Morris could have raised his present claims as a direct appeal from the District Court's dismissal. Even in death penalty cases, Rule 60(b) may not be used as a substitute for appeal, absent extraordinary circumstances. Morris contends that extraordinary circumstances inhere in the manner in which we dismissed the Commonwealth's appeal: We dismissed the appeal for lack of standing, but stated that our order was "entered without prejudice to the appellants arguing in any further proceeding in the district court, if there are such proceedings, that the amended habeas corpus petition should be regarded as untimely or otherwise defective under the Antiterrorism and Effective Death Penalty Act of 1996." Morris argues that this language disrupted his expectations based on the District Court's dismissal order, with its "savings" provision. He further maintains that the very risk that motivated the District Court's initial order, the risk that his claims would have to be dismissed as untimely, justifies Rule 60(b) relief, since putting his petition on the suspense docket would provide a stronger guarantee against that risk.
 
 
 4
 We disagree, and find no abuse of discretion in the denial of Rule 60(b) relief. Morris was no worse off after our order dismissing the Commonwealth's appeal for want of standing than he was after the initial District Court order, and the appeal did not constitute a change justifying Rule 60(b) relief. Since only a credible showing that the District Court's denial of Rule 60(b) relief was in error combined with a showing that the underlying habeas petition alleges a denial of a constitutional right could justify granting a CAPP, we will deny Morris's request for a CAPP and dismiss the appeal.
 
 I.
 
 5
 Morris was convicted of murder on November 30, 1983. Soon after, he was sentenced to death. On September 8, 1987, his post-trial motions were denied by the state trial court and judgment of sentence entered. On September 22, 1989, the Supreme Court of Pennsylvania affirmed the judgment. On April 2, 1990, Morris filed his first PCRA petition. On January 18, 1995, the trial court denied this petition without a hearing. On October 30, 1996, the Supreme Court of Pennsylvania affirmed the denial. On December 12, 1996, Morris filed a second PCRA petition pro se. On June 23, 1997, the Supreme Court of the United States denied certiorari on Morris's first PCRA petition. On October 27, 1997, Morris filed a federal habeas petition. The next day, October 28, 1997, Morris filed an amended second PCRA petition.
 
 
 6
 On March 18, 1998, the District Court for the Eastern District of Pennsylvania entered an order dismissing Morris's federal habeas petition without prejudice because not all of his claims had been exhausted in state court. As noted above, the dismissal included the specific proviso that a later-filed petition would count as an amendment under Rule 15(c) that would relate back to the initial petition for statute of limitations purposes. The District Court granted Morris a CAPP, but Morris did not appeal. Instead, the Commonwealth appealed this disposition, but, as noted above, we dismissed its appeal for lack of standing, though we recited that our dismissal of the appeal was without prejudice to a later argument that Morris's amended petition was time-barred. Morris then filed a Rule 60(b) motion in the District Court, contending that our order constituted grounds for 60(b) relief. The District Court denied that motion and denied a CAPP, and Morris appeals.
 
 II.
 
 7
 In order to understand the basis for Morris's appeal, we must examine how the Antiterrorism and Effective Death Penalty Act (AEDPA) bears on Morris's case. Three AEDPA provisions -- those governing the limitations period, the exhaustion requirement, and second or successive petitions -- taken together raise the possibility that Morris will never be able to litigate his claims in federal court.
 
 
 8
 First, AEDPA sets a strict statute of limitations on the filing of federal habeas petitions. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court." 28 U.S.C. S 2244(d)(1). This period begins to run, from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. S 2244(d)(1)(A). The statute is tolled, however, for "[t]he time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending." Id. S 2244(d)(2).
 
 
 9
 Morris's conviction became final on December 21, 1989, ninety days after September 22, 1989.[1] However, under our holding in Burns v. Morton, 134 F.3d 109, 111-12 (3d Cir. 1998), AEDPA's one-year statute of limitations does not begin to run until April 24, 1996 (the date of AEDPA's enactment) for a petitioner whose conviction became final before that date. Further, the Commonwealth concedes that Morris's first PCRA petition was properly filed. Therefore, the statute of limitations was tolled during the pendency of this petition, from April 2, 1990 until June 23, 1997. It follows that the statute of limitations on Morris's habeas petition did not begin to run until June 23, 1997, and there were approximately eight months left on the limitations period when he filed his federal habeas petition on October 27, 1997, leaving aside the second PCRA petition. We do not yet know how the state court will resolve the second petition; if it was properly filed, then the statute of limitations is still tolled, because that petition was filed before the first one was concluded, and it remains pending in state court. If the second PCRA petition was not timely filed, Morris faces a dilemma that we will explicate more fully below.
 
 
 10
 Second, 2254 requires federal habeas petitioners to exhaust state remedies unless there is an absence of available corrective state process or state remedies are ineffective. See 28 U.S.C. S 2254(b)(1). The Supreme Court has held that, even if some of the claims in a habeas petition have been exhausted in state court, if a habeas petition contains even one unexhausted claim it must be dismissed. See Rose v. Lundy, 455 U.S. 509 (1982); see also Christy v. Horn, 115 F.3d 201 (3d Cir. 1997). In certain limited circumstances, however, a court can consider a mixed petition. See id. at 206-07 (noting that "in rare cases exceptional circumstances of peculiar urgency may exist which permit a federal court to entertain an unexhausted claim," such as when state remedies are futile, inadequate, or incapable of providing a full and fair adjudication of federal claims); cf. Lambert v. Blackwell, 134 F.3d 506, 514- 15 (3d Cir. 1997) (explaining that, under AEDPA, which follows Granberry v. Greer, 481 U.S. 129 (1987), a district court has the authority to deny a habeas petition on the merits despite the petitioner's failure to exhaust state remedies). Third, AEDPA severely limits the extent to which a federal habeas petitioner can file a "second or successive" habeas petition. See 28 U.S.C. 2244(b).
 
 
 11
 After Morris filed his first federal habeas petition in 1997, the Commonwealth moved to dismiss Morris's petition because he had failed to exhaust his state remedies on some of his claims.[2] Morris conceded that he had not exhausted all of his claims, and agreed that the District Court could dismiss the petition without prejudice, but argued that the District Court should instead hold his petition in abeyance pending exhaustion of state remedies.
 
 
 12
 The District Court agreed with the Commonwealth that Morris's petition was mixed, and concluded that it had no choice but to dismiss the petition without prejudice. The Court recognized, however, that this dismissal could result in a possible statute of limitations problem for Morris. This problem would arise if the District Court dismissed Morris's habeas petition, and then the state courts determined that Morris's second PCRA petition was not filed within the time limits set for PCRA petitions (the Commonwealth has in fact moved to dismiss Morris's second PCRA petition on these grounds). The AEDPA statute of limitations on S 2254 petitions is only tolled during the pendency of "a properly filed application for State post-conviction relief or other collateral review." 28 U.S.C. S 2244(d)(2). As the District Court noted, a state collateral relief petition is "properly filed" only if it is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). Thus, if the state court dismisses Morris's second PCRA petition for untimeliness, the AEDPA statute of limitations would not have been tolled during its pendency, and the limitations period would have run out. Morris would then be time-barred from filing a S 2254 petition even though his claims would then be exhausted.
 
 
 13
 The District Court therefore attempted to fashion a remedy to prevent this eventuality. The Court determined that it could avoid this possibility by dismissing the petition without prejudice to Morris's right to file an amended petition pursuant to the relation-back provision of Federal Rule of Civil Procedure 15(c)(2) upon exhausting his state remedies.[3] See Morris v. Horn, 1998 WL 150956, at *1 (E.D. Pa. Mar. 19, 1998). At the same time, however, the District Court granted Morris a certificate of appealability in order to challenge the dismissal without prejudice:
 
 
 14
 It is further ordered that because the facts of this case raise the possibility that petitioner will be barred from re-filing a habeas corpus petition in federal court after exhausting his state court remedies, the Court finds that Petitioner "has made a substantial showing of the denial of a constitutional right" within the meaning of 28 U.S.C. S 2253(c)(2), and a certificate of appealability is hereby issued.
 
 
 15
 Id. at *1.
 
 
 16
 In spite of the grant of the certificate of appealability, Morris did not appeal the District Court's order, but the Commonwealth did. In dismissing the Commonwealth's appeal for lack of standing, we wrote that "the appellants have not been aggrieved by the order of the district court dismissing the petition for habeas corpus for failure to exhaust state remedies." Order of May 28, 1998, App. at 12. We added:
 
 
 17
 While . . . the provision in the order of dismissal permitting the petitioner, upon the completion of the state proceedings, to file an amended habeas corpus petition pursuant to Fed. R. Civ. P. 15(c)(2) ultimately may prove detrimental to the appellants, it is speculative whether such an amended petition ever will be filed.
 
 
 18
 Id. We concluded our order with the following proviso: "This order, however, is entered without prejudice to the appellants arguing in any further proceeding in the district court, if there are such proceedings, that the amended habeas corpus petition should be regarded as untimely or otherwise defective under the Antiterrorism and Effective Death Penalty Act of 1996." Id.
 
 
 19
 After our disposition of the case, Morris filed a Rule 60(b) motion in the District Court, requesting relief from the District Court's previous dismissal without prejudice of his federal habeas petition. He requested that the District Court rescind its dismissal and place the petition in abeyance or suspense pending exhaustion of his remaining unexhausted claims. Morris specifically relied on Rule 60(b)(6). See Fed. R. Civ. P. 60(b)(6) ("On motion . . . the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason justifying relief from operation of the judgment."). Morris relied on Christy, supra, in which we stated that, although a mixed petition must ordinarily be dismissed, it need not be when "special circumstances" exist. Morris argued that "special circumstances" existed because the order of this court created the possibility that he might not be able to bring some of his habeas claims in federal court, the precise result that the District Court's initial order attempted to avoid. The District Court concluded, however, that the Third Circuit's order had not changed anything, and specifically did not affect Morris's right to refile his habeas petition. Accordingly, it denied his 60(b) motion. The District Court also denied Morris's motion for a CAPP.
 
 III.
 
 20
 A habeas petitioner seeking to appeal must obtain a CAPP in order for the court of appeals to have jurisdiction. See 28 U.S.C. S 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court."); United States v. Williams, 158 F.3d 736, 741 (3d Cir. 1998) ("[A] certificate of appealability is required for this appeal to go forward . . . ."); see also Fed. R. App. P. 22(b)(1) (providing that a district judge may also issue a certificate of appealability). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2).
 
 
 21
 The Commonwealth contends that we should not issue Morris a certificate of appealability because he cannot make a "substantial showing" that the District Court's order denied him "a constitutional right." The Commonwealth notes that Morris has no constitutional right to either Rule 60(b) relief, the actual relief he seeks -- having his petition held in abeyance -- or federal habeas review of his claims at all. It submits that the District Court's denial of his Rule 60(b) motion does not decisively deny him relief on his substantive claims, but merely requires that he await the resolution of his second PCRA petition before seeking to have them adjudicated in federal court. Thus, the Commonwealth submits, the District Court's order from which Morris appeals did not deny him a constitutional right.
 
 
 22
 Morris responds that, under the Commonwealth's approach, a certificate of appealability could never be granted in a habeas case except from a dismissal of a habeas petition on the merits. In particular, a certificate of appealability could not issue for an appeal from the denial of a 60(b) motion, a dismissal without prejudice for lack of exhaustion, or possibly even a dismissal because of a violation of AEDPA's statute of limitations. But, Morris notes, courts, including this one, have granted certificates of appealability in each of these circumstances. See, e.g., Whitehead v. Johnson, 157 F.3d 384 (5th Cir. 1998) (AEDPA case granting CAPP on appeal from dismissal for lack of exhaustion); Mickens v. United States, 148 F.3d 145, 146-47 (2d Cir. 1998) (AEDPA case granting CAPP on appeal of denial of 60(b) motion); Miller v. New Jersey Dept. of Corrections, 145 F.3d 616 (3d Cir. 1998) (AEDPA case granting CAPP on appeal from dismissal of habeas petition on AEDPA statute of limitations grounds); Adelson v. DiPaola, 131 F.3d 259 (1st Cir. 1997) (same as Whitehead); cf. Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994) (pre- AEDPA case granting a certificate of probable cause (CPC) on appeal from dismissal without prejudice for lack of exhaustion); Burkett v. Cunningham, 826 F.2d 1208 (3d Cir. 1987) (pre-AEDPA case granting CPC on appeal from denial of 60(b) motion).
 
 
 23
 The Commonwealth responds that in all of the cases from this circuit that Morris cites, as well as many from other circuits, the certificate of appealability was granted without any substantive discussion. Accordingly, the Commonwealth suggests, we cannot derive any larger lesson from these decisions. In effect, the Commonwealth's approach would preclude appellate review of all procedural issues relating to federal habeas corpus. The district courts would be left to themselves to develop the law relating to AEDPA's statute of limitations, the exhaustion requirement, etc., potentially leading to unreviewable contradictions in the law of the circuit or the erroneous denial of relief to a petitioner under a sentence of death. We do not accept the proposition that appellate review is unavailable on these issues.
 
 
 24
 A well-reasoned rule has been set forth in a series of cases from the Court of Appeals for the Fifth Circuit. See Sonnier v. Johnson, 161 F.3d 941, 943-44 (5th Cir. 1998); Whitehead, 157 F.3d at 386; Murphy v. Johnson, 110 F.3d 10, 11 (5th Cir. 1997). Under this approach, a certificate is granted only if the petitioner makes: (1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights.[4] At oral argument, the Commonwealth conceded the merit of the Fifth Circuit standard.
 
 
 25
 In both Whitehead and Sonnier, the Fifth Circuit held that, once it concluded that the district court's decision on the procedural issue was erroneous, it should grant a certificate of appealability and remand if the district court had not considered the merits of the constitutional claims or the second step of the Sonnier test. See Sonnier, 161 F.3d at 945-46; Whitehead, 157 F.3d at 387-88. Such an approach allows the district courts to address a petitioner's claims in the first instance. Accordingly, the court in both cases concluded that, if the district court had either dismissed the petition without reaching the merits or had denied a certificate of appealability because its decision did not raise any substantial constitutional issues, the prudent course was to grant the certificate of appealability and take jurisdiction, and then remand to the district court for further proceedings.
 
 
 26
 We agree with the Fifth Circuit formulation, and adopt it today. In this case, the District Court never considered the merits of the petition, and its denial of a certificate of appealability on the present question did not consider the merits of the underlying petition. Accordingly, the question whether to grant a certificate of appealability turns on whether Morris has made a credible showing that the District Court's denial of his Rule 60(b) motion was erroneous.
 
 IV.
 Rule 60(b) provides that:
 
 27
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; . . . or (6) any other reason justifying relief from the operation of a judgment.
 
 
 28
 Fed. R. Civ. P. 60(b). "We review a district court's denial of a Rule 60(b) motion for abuse of discretion. An abuse of discretion may be found when `the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " Reform Party v. Allegheny County Dept. of Elections, 174 F.3d 305, 311 (3d Cir. 1999) (en banc) (quoting International Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir.1987) (citations omitted).
 
 
 29
 In Reform Party, we elaborated on the availability of Rule 60(b) relief in circumstances involving an intervening change in the governing law, which Morris argues occurred here:
 
 
 30
 Relief under Rule 60(b)(6) "is available only in cases evidencing extraordinary circumstances." Martinez- McBean v. Government of Virgin Islands, 562 F.2d 908, 911 (3d Cir.1977) (quoting Stradley v. Cortez , 518 F.2d 488, 493 (3d Cir.1975)). Furthermore, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." Agostini v. Felton, 117 S.Ct. 1997, 2018 (1997). . . .
 
 
 31
 Furthermore, to the extent that the Department is attempting to use its Rule 60(b)(6) motion as a means of seeking review of our decision in Patriot Party I, a Rule 60(b)(6) motion may not be used as a substitute for an appeal. Martinez-McBean, 562 F.2d at 911.
 
 
 32
 Id. at 311-12. We held that, where the appellants made a deliberate choice not to petition for certiorari when a similar case was pending before the Supreme Court, even a subsequent Supreme Court decision that favored the appellants' position could not justify granting a Rule 60(b)(6) motion. See id. at 312.
 
 
 33
 Morris contends that the concern that motivated the District Court to fashion its original order as it did, which still exists after our order dismissing the Commonwealth's appeal, constitutes "extraordinary circumstances" justifying 60(b) relief. As we explained above, if Morris's petition is dismissed for lack of exhaustion and then his second PCRA petition is dismissed as improperly filed, the AEDPA statute of limitations will not be tolled during the pendency of the second PCRA petition and a new federal habeas petition would be time-barred. Morris submits that this is an "extraordinary circumstance," as it is possible that the District Court's relation back order will not suffice to protect his interests.
 
 
 34
 The Commonwealth contends that this is not an "extraordinary circumstance" because it is at best speculative that Morris will be harmed by the District Court's original order. Morris can litigate his second PCRA petition -- he apparently is presently doing so before Judge James Fitzgerald of the Philadelphia Common Pleas Court -- and, if it is considered and rejected on the merits, the AEDPA statute of limitations will be tolled and Morris can file all of his federal habeas claims upon exhausting state procedures. Under that scenario, the District Court's denial of 60(b) relief will not harm him in any way. If the PCRA petition is dismissed as untimely, however, the parties spin out various possibilities, all of which hinge upon Morris's ability to take advantage of the relation back order or of equitable tolling (though it is possible that there is some other avenue of relief yet to be explored).[5] It is possible that, if the second PCRA petition is dismissed as untimely, holding Morris's petition in abeyance would have been better for him than invoking the relation back order or equitable tolling, but the Commonwealth emphasizes that this is only a possibility.
 
 
 35
 The harm to Morris is even more speculative than it at first appears. If his second PCRA petition is dismissed by the state courts as untimely, not only would the AEDPA statute of limitations not be tolled, but the claims themselves might not be a basis for relief in a federal habeas petition because of the doctrine of procedural bar. A federal court cannot grant a petitioner habeas relief on claims with respect to which the petitioner failed to follow state rules of procedure at trial, on appeal, or on state post- conviction review. A claim on which the petitioner did not follow state procedures will only be excused from procedural default if the petitioner can show good cause for the failure to follow state procedure and actual prejudice resulting therefrom. See Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977).
 
 
 36
 Thus, even if the District Court were to have held Morris's petition in abeyance pending resolution of the second PCRA petition (thereby almost certainly avoiding any AEDPA statute of limitations problem), if the state courts dismissed his PCRA petition for untimeliness, he could not obtain federal relief on the claims stated in the second PCRA petition because of procedural default, unless he could show cause and prejudice. Thus, the risks he faces are (1) that he will be time-barred from presenting meritorious claims from his first PCRA petition in federal court even though they were properly exhausted, and (2) that he will be time-barred from presenting meritorious claims from his second PCRA petition even though he can show cause and prejudice to excuse his procedural default on them. Whether he could show cause and prejudice on the claims in the second PCRA petition adds another level of speculation onto Morris's contention that he might be harmed by the District Court's order.
 
 
 37
 Morris, however, contends that the "extraordinary circumstance" justifying Rule 60(b) relief is the possibility that he may never, because of AEDPA's statute of limitations, be able to present his claims in federal court. The Commonwealth is of course correct that the harm is at most probabilistic, but that does not avoid the fact that, if he is harmed, there will then be nothing he can do about it.
 
 
 38
 While Morris clearly faces serious consequences if his second PCRA petition is rejected as untimely and the District Court's relation back order is ultimately rejected, we conclude that this risk does not constitute "extraordinary circumstances" because, as we will explain, these consequences were readily apparent as of the District Court's initial order, and Morris should have appealed therefrom.
 
 V.
 
 39
 Morris contends that our previous order dismissing the Commonwealth's appeal, and specifically the proviso therein stating that the dismissal was without prejudice to the Commonwealth's later arguing that an amended petition is untimely, is a changed circumstance justifying relief from the District Court's original order. He contends that the District Court's prior order was intended to ensure that he would be able to exhaust his claims and then bring a federal habeas petition without facing AEDPA's time bar. Our order, he argues, raises the possibility that the District Court's order will not achieve that result.[6]
 
 
 40
 What Morris is attempting to raise as a Rule 60(b) motion is in fact what he should have brought as an appeal. "A litigant faced with an unfavorable district court judgment must appeal that judgment within the time allotted by Federal Rule of Appellate Procedure 4, whether or not the litigant first files a Rule 60(b) motion (where the Rule 60 motion is filed more than 10 days following judgment)." Stone v. INS, 514 U.S. 386, 401 (1995); accord Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 653 (3d Cir. 1998) ("[A] request for relief pursuant to Rule 60(b) cannot be used as a substitute for an appeal."). On the other hand, we have indicated that this rule only applies "if the aggrieved party could have reasonably sought the same relief by means of appeal." Martinez-McBean, 562 F.2d at 911; see also Rolo, 155 F.3d at 653 (finding Rule 60(b) relief permissible as a substitute for appeal where "exceptional circumstances" exist). Accordingly, even if Morris is attempting to raise an argument that he could have made on appeal, he can do so if he demonstrates "exceptional circumstances."
 
 
 41
 Morris contends that he was misled (lulled into submission) by the District Court's initial order so that he reasonably did not think he needed to appeal from it because he believed it protected his rights. We disagree. In the initial order itself the District Court granted Morris a certificate of appealability so that he might appeal from the dismissal without prejudice. It specifically noted in doing so that "the facts of this case raise the possibility that petitioner will be barred from re-filing a habeas corpus petition in federal court after exhausting his state court remedies." Morris, 1998 WL 150956, at *1. In the face of this open invitation to appeal, Morris cannot contend that he was misled by the District Court's decision, especially as he had asked throughout the case for a stay or abeyance and the District Court's order clearly failed to give him what he sought.
 
 
 42
 Nor did our order dismissing the Commonwealth's appeal constitute a change in circumstances, because the dismissal merely recognized that the Commonwealth can make certain arguments that it has been at all times free to make. We dismissed the appeal for "lack of standing," as we found that the Commonwealth was not "aggrieved by the order of the district court." This dismissal for lack of standing constitutes a dismissal for lack of jurisdiction. See Steel Co. v. Citizens for a Better Envt., 118 S. Ct. 1003, 1016 (1998). Because we lacked jurisdiction, we lacked the "power to declare the law," and the only "function remaining to [us was] that of announcing the fact and dismissing the case." Id. at 1012. Our statement that the order was entered without prejudice to the Commonwealth's potential later arguments simply acknowledged the situation that already existed. We gave the Commonwealth nothing new, nor could we have done so, as we had no jurisdiction. For all legal purposes, it is as if the Commonwealth never appealed. Thus, Morris cannot use a Rule 60(b) motion to second-guess his decision not to appeal because of the Commonwealth's dismissed appeal. See Reform Party, 174 F.3d at 312.
 
 
 43
 Because Morris cannot make a credible showing that the District Court's denial of the Rule 60(b) motion was erroneous, we will deny a CAPP and dismiss the appeal.
 
 
 
 NOTES:
 
 
 [1]
 After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired. See S. Ct. R. 13(1); cf. Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) (applying this rule to 28 U.S.C. S 2255(1)).
 
 
 [2]
 Morris raises a number of different claims regarding his conviction and sentence, although this case does not turn on the specifics of any of the claims. His claims include: that his trial counsel faced a conflict of interest because he represented Morris's brother in a personal injury case, when some of the eyewitnesses to the present crime had previously identified the brother as the murderer; that trial counsel was ineffective in failing to investigate, develop, and present mitigating evidence relating to Morris's abusive childhood and history of mental disease; that his conviction was based on unreliable identification evidence; that trial counsel was ineffective in failing to discover, and the prosecutors failed to disclose, exculpatory evidence relating to the identifications; that the trial court erroneously admitted evidence of an unrelated offense; that the prosecutor made improper statements and arguments during both the guilt and sentencing phases of the trial; that the court improperly excluded relevant mitigating evidence; that the prosecution used its peremptory challenges in a racially discriminatory manner; that the aggravating circumstance on which he was sentenced to death is unconstitutional; that the penalty-phase jury instructions were improper in various respects; that the jury was death-qualified but not life- qualified; and that the trial court erred in its treatment of certain identification testimony. The claim of discriminatory peremptory challenges is based in part on a recently discovered 1980 training video from the Philadelphia DA's office, which surfaced during the 1997 District Attorney's election, instructing ADAs how to exclude African- Americans from juries.
 
 
 [3]
 Rule 15(c)(2) provides that "An amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).
 
 
 [4]
 The Eighth Circuit, sitting en banc with two judges dissenting, has taken a somewhat different approach, reading S 2253(c) as "addressing only the sort of showing required for a petitioner to obtain appellate review of the merits of his or her claims for habeas corpus or S 2255 relief" and not setting forth a standard governing review of preliminary procedural issues. Nichols v. Bowersox, 172 F.3d 1068, 1070 n.2 (8th Cir. 1999) (en banc); see also Gaskins v. Duval, No. 97-2051, 183 F.3d 8, 9, n.1 (1st Cir. July 7, 1999) (following Nichols); Thomas v. Greiner, 174 F.3d 260, 261 (2d Cir. 1999) (stating that other decisions of the circuit had sub silentio adopted a rule of reviewing procedural errors without a showing of a denial of a constitutional right). We believe that the Eighth Circuit approach makes practical sense but is at odds with the text of AEDPA, while the Fifth Circuit approach adheres to the text of S 2253(c).
 
 
 [5]
 We of course need not decide today the effect of the District Court's original order on any claim for equitable tolling of the statute of limitations that Morris may ultimately have. To the extent that Morris expressed the concern that our dismissal of the appeal weighed against his potential equitable tolling argument, our discussion infra should assuage that concern.
 
 
 [6]
 Morris also argues that, even if our order did not change anything, he is still entitled to Rule 60(b) relief because his failure to appeal the original order was a result of his mistake in failing to recognize the import of the prior order. The Commonwealth raises several issues surrounding this second ground for Rule 60(b) relief. It first notes that Morris did not raise this ground for relief in the District Court, and therefore should be barred from arguing it now. Second, the Commonwealth contends that courts have repeatedly held that Rule 60(b)(1) and 60(b)(6) are independent and separate grounds for relief, and thus Morris's assertion that he is entitled to relief by reason of mistake undermines his contention that the circumstances have changed. We need not dwell on these arguments at length, as we reject Morris's more general argument on this point; as we will explain, the District Court's order was clear enough that there were no reasonable grounds for mistaking its import.