time in which a petitioner could have petitioned the United States Supreme Court for certiorari."); *cf. Gutierrez v. Schomig*, 233 F.3d 490, 492 (7th Cir. 2000), *cert. denied*, 532 U.S. 950 (2001) (deciding not to toll for the ninety-day period in which a litigant potentially could have filed a petition for certiorari with the United States Supreme Court using the "properly filed application . . . [that] is pending" language of § 2254(d)(2), and specifically reserving for later the question of whether a petition for certiorari that has been filed with the United States Supreme Court falls within the statutory language of § 2254(d)(2)).

While allowing tolling for Supreme Court review in this circumstance would better  effectuate the incentive for litigants to exhaust all available state remedies before proceeding in the lower federal courts, we are foreclosed from reaching this result under the authority of *Duncan* and *Isham*. As such, we hold that tolling of the one-year statute of limitations period in § 2244(d)(1) for "State post-conviction or other collateral review" in § 2244(d)(2) does not extend to the period in which the United States Supreme Court considers a petition for certiorari following the state collateral review process.  Thus, Abela's statute of limitations period began running immediately following the final denial of his state post-conviction review by the Michigan Supreme Court on May 28, 1998. *See* § 2244(d)(2).  Abela's § 2254 habeas petition is untimely because 451 days of untolled time passed between the date his conviction became final and the filing of his § 2254 petition.  This is beyond the one-year statute of limitations period required by AEDPA and § 2244.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court in denying Abela's § 2254 habeas petition because such petition was filed outside the applicable statute of limitations.  Because Abela's § 2254 petition for habeas corpus is outside the one-year statute of limitations period in 28 U.S.C. § 2244(d)(1), we need not consider the procedural default issue or the remainder of Abela's claims on the merits.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0376P (6th Cir.)
File Name:  02a0376p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KEVIN MARK ABELA,
    *Petitioner-Appellant,*

            *v.*                          No. 00-2430

WILLIAM MARTIN, Director,
Michigan Department of
Corrections,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-72095—Robert H. Cleland, District Judge.

Argued:  July 30, 2002

Decided and Filed:  October 30, 2002

Before:  SILER, COLE, and CLAY, Circuit Judges.

───────────────

### COUNSEL

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for Appellant.   Raina I. Korbakis, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.  **ON BRIEF:**  James Sterling Lawrence, Detroit, Michigan, for Appellant.  William

C. Campbell, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge.   This action arises from a state manslaughter conviction and a subsequent petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The district court denied the habeas petition on its merits, and Petitioner-Appellant Kevin Mark Abela has appealed.  Abela argues that his habeas petition was timely filed and not procedurally defaulted.  For that reason, he urges us to reverse the judgment of the district court and grant his petition on the grounds that his Fifth Amendment rights were violated by his post-arrest interrogation and the admission of statements from that interrogation at trial, because of prosecutorial conduct at trial, and because of ineffective assistance of trial and appellate counsel.

Although several issues were raised in this appeal, we need address only two:  (1)  whether Abela's habeas petition is moot and thus not within our Article III jurisdiction; and (2) whether Abela's habeas petition is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  Because Abela's § 2254 habeas petition is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1), we do not address the procedural default issue or the remainder of Abela's claims on the merits.  Accordingly, we **AFFIRM** the judgment of the district court in denying Abela's § 2254 habeas petition because such petition was filed outside the applicable statute of limitations.

§ 2244(d)(2) to permit tolling here.  No other avenues are left for tolling in the statute.[2]

Most of the circuits that have addressed this issue also have held that state post-conviction collateral review is complete once the state's highest court has ruled.  *See Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000), *cert. denied*, 531 U.S. 1166 (2001) ("[A]n application 'for State post-conviction or other collateral review . . . is pending,' [under] 28 U.S.C. § 2244(d)(2), only so long as the case is in the state courts."); *Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999), *cert. denied*, 528 U.S. 1084 (2000) ("The time after the Oklahoma Court of Criminal Appeals finally denied his post-conviction application until the United States Supreme Court denied his petition for certiorari was not 'time during which a properly filed application for State post-conviction . . . review . . . [was] pending.'"); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000) ("[Section] 2244(d)(2) does not toll the limitations period from the time of denial of state habeas relief by the state high court until the

_____

[2]At oral argument, Petitioner cited two cases from the Third Circuit that he claimed allowed for tolling when a petition for certiorari is filed with the United States Supreme Court following state post-conviction collateral review.  The first, *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001), involves a situation where the defendant did not file a petition for certiorari with the United States Supreme Court following the termination of his state post-conviction collateral review process.  In fact, the court specifically excluded from tolling under § 2244(d)(2) the ninety-day period following the denial of state post-conviction collateral review, and made no comment on the status of tolling when a petition is filed.  264 F.3d at 318.  In the second case, *Morris v. Horn*, 187 F.3d 333 (3d Cir. 1999), the Third Circuit found that § 2244(d)(2) tolled the one-year statute of limitations period under § 2244(d)(1)(A) from the date upon which the petitioner first filed his petition for state post-conviction relief until the date on which the United States Supreme Court denied certiorari review of that petition.  187 F.3d at 333-37.  We note that *Morris* was decided without the benefit of the Supreme Court's decision in *Duncan*.  While *Nara* and *Morris* are instructive, we are still bound by *Isham*, which excludes United States Supreme Court review of state post-conviction collateral review from tollable time under § 2244(d)(2).  *Isham*, 226 F.3d at 695.

*Duncan* concluded that in the operative tolling phrase of § 2244(d)(2), "State post-conviction or other collateral review," "State" modifies both "post-conviction" and "other collateral review." 533 U.S. at 174; *see also Isham v. Randle*, 226 F.3d 691, 695 (6th Cir. 2000), *cert. denied*, 531 U.S. 1201 (2001). With the addition of the "State" modifier, the § 2254(d)(2) language of "other collateral review" forms "other state collateral review." *See Duncan*, 533 U.S. at 175. Thus, § 2244(d)(2) permits tolling only for "State post-conviction," or "other state collateral review." *Id.* at 181-82 (concluding federal habeas review does not toll § 2244(d)(1) statute of limitations because it is not "State post-conviction or other collateral review" under § 2244(d)(2)).

Given that § 2244(d)(1) can only be tolled for "State post-conviction," or "other state collateral review," we must now consider whether a petition for certiorari to the United States Supreme Court following the denial of state post-conviction collateral relief can be considered as such. The holding in *Isham*, 226 F.3d at 695, answers this question in the negative. There, this Court found that,

> A petition for certiorari to the United States Supreme Court is not "state post conviction relief." Neither is such a petition "other state collateral relief." As the Tenth Circuit observed in *Rhine*, [182 F.3d at 1156,] a petition for a writ of certiorari to the United States Supreme Court is "simply not an application for state review of any kind . . . ."

*Isham*, 226 F.3d at 695.

Because *Duncan* mandates that § 2244(d)(2) permits tolling only for the time associated with "State post-conviction," or "other state collateral review," and because our holding in *Isham* precludes us from considering a petition for certiorari to the United States Supreme Court as "State post-conviction," or "other state collateral review," we cannot read

---

## BACKGROUND

### A.  Factual Background

Abela's underlying conviction stems from the stabbing death of Stanley Underwood at a party in the early morning hours of May 19, 1990. Abela arrived at a party at the home of Allen Howard in Rochester Hills, Michigan, sometime during the evening of May 18. At approximately 1 a.m. on May 19, Abela and a friend noticed a man, Jacob Sullivan, pushing a car out of the driveway of the home. Abela confronted Sullivan and an argument ensued, which then erupted into a fistfight. After the fight broke up, Sullivan ran into the house to tell his older brother, Jerry, that someone had beaten him up.

A second fight began when Jerry Sullivan and Howard ran outside to confront Abela. Abela's nose was broken in the fight, which ended with Howard holding Abela down on the ground. Howard promised Abela that he would release him if he left the party immediately. Abela then left the party with his friend Ronald Wright.

Upon reaching the car, Wright realized he had forgotten his jacket and returned to retrieve it. Abela was waiting for Wright at the edge of the driveway when he was attacked by several guests from the party. Abela was knocked to the ground and surrounded by several assailants, who kicked and punched him about the face and body. Among this group of attackers was Stanley Underwood, who, during the course of the brawl, straddled Abela's chest. Abela thereupon drew a knife from a sheath on his belt and stabbed Underwood in the chest and left arm three times. Underwood died shortly afterwards.

Abela fled to a friend's house, where he called 911 and admitted to the operator that he had stabbed someone. After meeting the police at Howard's house, Abela was taken to a hospital emergency room for treatment. While at the emergency room, but before being treated for his injuries, Oakland County Police Sergeant Michael McCabe questioned

Abela about the events leading up to the stabbing. Abela responded by stating, "[M]aybe I should talk to an attorney by the name of William Evans," and handed Sergeant McCabe Evans's business card. Sergeant McCabe promised Abela that he would contact Evans, and left the room. Upon returning, McCabe made no mention of the fact that he had been unable to contact Evans, and proceeded to read Abela his *Miranda* rights. Abela signed a waiver form indicating that he had been informed of his *Miranda* rights and began giving a statement to Sergeant McCabe -- beginning with the phrase, "I'll tell you everything." It does not appear that Sergeant McCabe took any steps toward contacting Evans before taking Abela's statement.

Abela gave a second statement to the police after his release from the hospital. In both statements, Abela admitted to stabbing Underwood, but claimed that he had done so in self-defense.

## B. Procedural History

Abela was charged with second degree murder and carrying a concealed weapon in the stabbing death of Underwood. Before trial in the Oakland County Circuit Court, Abela's counsel sought dismissal of the weapons charge because the knife was not concealed -- it was carried in a sheath attached to the outside of Abela's belt. The trial judge granted that motion on September 12, 1990. On November 5, 1990, the prosecution filed a motion -- outside the applicable 14-day time limit -- seeking reconsideration of the dismissal. Mich. Ct. R. 2.119(F)(1). Abela's counsel did not object to this motion. On June 3, 1991, the judge granted the motion for reconsideration and reinstated the weapons charge.

The trial commenced in June 1991. During closing arguments, the prosecutor referred to a conversation between Abela and co-defendant Ronald Wright, a conversation that does not appear anywhere in the trial record. The prosecutor stated:

**2. Tolling for the certiorari period for United States Supreme Court review of Abela's state post-conviction collateral review petition.**

The remaining issue before us is whether § 2244(d)(2) provides for tolling of the one-year statute of limitations period in § 2244(d)(1) for the period of time in which a petitioner seeks certiorari review by the United States Supreme Court following the denial of post-conviction collateral relief by the State. This is of particular importance here, as the timeliness of Abela's petition turns on this very issue. If § 2244(d)(2) cannot be read to toll the statute of limitations period while a petitioner seeks review from the United States Supreme Court, then § 2244(d)(1) cannot be tolled for the 116 days in which Abela filed and received a petition for certiorari, thus rendering his petition untimely by 86 days. Likewise, if § 2244(d)(2) can be read to permit tolling for this period of time, Abela accumulates 189 days from when the United States Supreme Court denied certiorari to when the petition for habeas corpus was filed. This results in a total of 335 days of untolled time from the date Abela's conviction became final to the date he filed his petition for habeas corpus, thus satisfying the one-year § 2244(d)(1) statute of limitations.

Section 2244(d)(2) allows for tolling of the time associated with the filing of an "application for State post-conviction or other collateral review." Abela argues that a petition for certiorari with the United States Supreme Court following the denial of state post-conviction collateral relief constitutes "other collateral review" and thus permissibly tolls the one-year § 2244(d)(1) statute of limitations. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 177 (2001) (parsing but not deciding the limits of, and overlap between, "State post-conviction review" and "other collateral review"). This Court must first determine, then, whether the word "State" modifies both "post-conviction" and "other collateral review." The recent United States Supreme Court decision in *Duncan*, 533 U.S. at 173, indicates that it does. After an extensive analysis of congressional intent and principles of statutory construction,

of Abela's claims should qualify as untolled time. Abela argues that less than 333 days of untolled time had passed because the language of § 2244(d)(2) provides for additional tolling until October 19, 1998, when the United States Supreme Court denied his petition for certiorari from the Michigan Supreme Court's denial of leave. Under the language of § 2244(d)(2), we reject both of these contentions.

**1. Tolling during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court on collateral review of a petitioner's claims.**

The statutory language of 28 U.S.C. § 2244 is ambiguous as to whether the one-year limitations period should be tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court on collateral review of a petitioner's claims. The relevant section states:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The tolling in the intervals between each level of state court collateral review turns on the definition of the word "pending" in § 2244(d)(2). The United States Supreme Court recently clarified this issue, noting that a petitioner's claim is "pending" for the entire term of state court review -- including those intervals between one state court's judgment and the filing of an appeal with a higher state court. *Carey v. Saffold*, 122 S. Ct. 2134, 2138 (2002). As the district court pointed out, Abela timely filed his application for collateral review at each stage of the appellate process, and thus meets the "properly filed" and "pending" language of § 2244(d)(2).

Do you think when they got back to that car they were mad as hell? Both of them got shot down, pretty damn drunk, they are pretty pissed off. They've lost the fight. They've been thrown out. They've been humiliated. They've been embarrassed.

Not only that, Ron Wright says, "My damn coat's back there. Let's go get it." [Abela then replied,] "Ronnie, better take this [Abela's knife] when we go back. Ain't nobody going to kick our ass anymore. Let's go back."

Abela was convicted by a jury of voluntary manslaughter and carrying a concealed weapon on July 24, 1991. He was sentenced to a term of seven to fifteen years for voluntary manslaughter, and a concurrent forty months to five years of incarceration for carrying a concealed weapon.

Abela appealed his conviction by raising three issues in the Michigan Court of Appeals on February 17, 1992. The three issues were: (a) that his sentence was disproportionate to the crime; (b) that the trial court erred by reinstating the weapons charge; and (c) that the trial court erred by allowing the prosecution to present rebuttal testimony not raised in its case in chief. The Michigan Court of Appeals affirmed Abela's conviction and sentence in an unpublished disposition. *People v. Abela*, No. 144005 (Mich. Ct. App. July 22, 1994). The Michigan Supreme Court denied Abela's delayed application for leave to appeal these issues on March 31, 1995. *People v. Abela*, No. 100783 (Mich. Mar. 31, 1995).

On August 20, 1996,[1] Abela filed a motion for relief from judgment in the Oakland County Circuit Court, raising six claims: (a) Abela's statement at the hospital was involuntary because Sergeant McCabe ignored Abela's request for an attorney; (b) Abela's statement at the hospital was involuntary because he was injured and under the influence of alcohol and pain medication; (c) the trial court improperly granted the prosecution's untimely motion to reconsider the dismissal of the concealed weapon charge; (d) the prosecutor unfairly prejudiced Abela by presenting witness testimony in his closing argument that was unsupported by the record; (e) Abela's trial counsel provided ineffective assistance; and (f) Abela's appellate counsel provided ineffective assistance. The motion was denied "for lack of merit on the grounds presented." *People v. Abela*, No. 90-101083 (Oakland County Cir. Ct. Oct. 22, 1996). Abela raised the same six issues on appeal to the Michigan Court of Appeals, which also denied leave to appeal and a motion to remand. *People v. Abela*, No. 200930 (Mich. Ct. App. July 22, 1997). On August 9, 1997, Abela again raised these six issues in his delayed application for leave to appeal to the Michigan Supreme Court, which likewise denied his petition. *People v. Abela*, No. 110260 (Mich. May 28, 1998). On August 3, 1998, Abela filed a petition for certiorari with the United States Supreme Court, which was denied on October 19, 1998. *Abela v. Michigan*, 525 U.S. 948 (1998).

Abela was released to parole status on March 16, 1998, and discharged from parole on March 16, 2000 -- terminating his seven to fifteen year sentence for manslaughter. Abela's three

---

[1] Abela claims in his brief that he filed his Motion for Relief from Judgment with the state court on April 14, 1996, rather than August 20, 1996. *See* Appellant's Brief at 11 n.1. The district court relied on the August 20, 1996 date in its calculations of whether Abela complies with the one-year statute of limitations under § 2244(d)(1). Using the April 14, 1996 date would provide Abela an additional five months of tolling of the statute of limitations -- crucial in this case. However, there is no support for Abela's claim of this April 14, 1996 date of filing. The state court docket sheet lists the filing date for this motion as August 20, 1996. The date stamp on the motion itself is August 20, 1996.

States Supreme Court considers a petition for certiorari following the denial of collateral review at the state level.

Abela's direct appeal ended on March 31, 1995, when the Michigan Supreme Court denied Abela's motion for relief from judgment. Because Abela's claim became final before the passage of AEDPA, the § 2244(d)(1) one-year statute of limitations period for the filing of a § 2254 habeas petition began to run on April 24, 1996. On August 20, 1996, after the one-year statute of limitations period had run for 118 days, Abela filed his motion for relief from judgment and the § 2244(d)(2) tolling provision stayed the limitations period. The one-year statute of limitations period began running again on May 28, 1998, when the Michigan Supreme Court denied leave on Abela's motion for relief from judgment after his appeal through the state collateral review system. *See* § 2244(d)(2). The one-year statute of limitations ran for an additional 333 days until Abela filed this habeas petition on April 26, 1999. Taking the entire elapsed time (118 days from the period April 24, 1996 to August 20, 1996, plus 333 days from the period May 28, 1998 to April 26, 1999) amounts to 451 days of untolled time after Abela's conviction became final -- well outside the one-year statute of limitations provided by AEDPA. For that reason, we dismiss Abela's § 2254 habeas petition as untimely.

### C. Elements of this tolling calculation

Uncontested by the parties is the 118 days of untolled time between April 24, 1996, when AEDPA was enacted, and August 20, 1996, when Abela filed his motion for relief from judgment. *See Austin*, 200 F.3d at 393; 28 U.S.C. § 2244(d)(2). However, the parties do contest the calculation of the final 333 days of untolled time following the Michigan Supreme Court's May 28, 1998, denial of Abela's motion for relief from judgment after his appeals through the state collateral review system. The Respondent argues that more than 333 days of untolled time had passed because the time between the lower state court's decision and the filing of a notice of appeal to the higher state court on collateral review

Abela's habeas petition, filed while on parole, attacks his underlying criminal conviction. Because Abela was on parole when his habeas petition was filed, he meets the "in custody" requirements of §§ 2241(c)(3) and 2254(a). *See Maleng*, 490 U.S. at 491. Because he is challenging his underlying criminal conviction, the collateral consequences of that conviction provide Abela the personal stake in the outcome of the lawsuit he needs to satisfy Article III's case or controversy requirement. *Spencer*, 523 U.S. at 7. With subject matter jurisdiction and an actual case or controversy before us, Abela's case is not moot and therefore is within our jurisdiction. *Speer*, 847 F.2d at 311.

**B. Whether Abela's habeas petition is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1).**

Abela argues that the statute of limitations in 28 U.S.C. § 2244(d)(1) does not bar his habeas petition. The district court found that the statute of limitations did not bar Abela's habeas petition, in part because the statute of limitations period was tolled under the language of § 2244(d)(2) while Abela applied for certiorari to the United States Supreme Court following the denial of state post-conviction collateral review by the Michigan Supreme Court. Section 2244(d)(1) provides for a one-year statute of limitation for habeas claims after the date on which the judgment became final by the conclusion of direct review. A one-year grace period after the April 24, 1996, enactment of AEDPA is permitted if the judgment became final before the passage of AEDPA. *See Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999). Section 2244(d)(2) provides that the time during which a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" will not count against this one-year limit. Accordingly, the issue before us is whether the § 2244(d)(1) statute of limitations period is to be tolled during: (a) the time between a lower state court's decision and the filing of a notice of appeal to a higher state court on collateral review of a petitioner's claims; and (b) the period in which the United

to five year sentence for carrying a concealed weapon ended on October 22, 1995.

On April 26, 1999, before his parole term had ended, Abela sought a writ of habeas corpus pursuant to § 2254, raising the same claims as in his motion for relief from judgment (except for his claim regarding the trial court's decision to reconsider its dismissal of the concealed weapon charge). The district court issued a memorandum opinion and denied the petition for habeas relief on October 31, 2000. On December 28, 2000, the district court denied Abela's motion for a certificate of appealability.

Abela appealed his denial of the motion to this Court. We granted his certificate of appealability on the issues before us on April 20, 2001.

**DISCUSSION**

**1. STANDARD OF REVIEW**

In an appeal of a district court's decision denying habeas relief under 28 U.S.C. § 2254, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996). Under AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court determined that a state court's decision is contrary to clearly established federal law where it fails to consider a rule of law that is embedded in the Court's jurisprudence at the time the state conviction became final. *See id.* at 380. In defining "clearly established law," the Court held that "rules of law are sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." *Id.* at 382. Comparatively, a rule established following a petitioner's conviction "that 'breaks new ground or imposes a new obligation on the States or the Federal Government'" is not considered to be clearly established for the purposes of this section. *Id.* at 381 (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)). The *Williams* Court further held that a state court unreasonably applies clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet unreasonably applies that principle to the facts of the defendant's case. *See id.* at 413. A state court is considered to have unreasonably applied Supreme Court precedent when it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

This Court must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

We examine Abela's claims under these parameters.

## 2. ANALYSIS

### A. Whether Abela's habeas petition is within our Article III jurisdiction.

We note that subject matter jurisdiction over this matter is conferred by 28 U.S.C. § 2254(a) because Abela was "in custody" at the time he filed his habeas petition with the district court. *See* 28 U.S.C. §§ 2241 (c)(3), 2254(a).

28 U.S.C. §§ 2241(c)(3) and 2254(a) require that a § 2254 habeas petition be filed when a person is "in custody in violation of the Constitution or laws or treaties of the United States." An incarcerated convict's challenge to the validity of his conviction satisfies the "in custody" requirement of 28 U.S.C. §§ 2241(c)(3) and 2254(a). *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). A prisoner who is placed on parole likewise satisfies this requirement because his release is not unconditional -- the parolee is required to report regularly to his parole officer, remain at a given job, residence, and community, and refrain from certain activities. *Jones v. Cunningham*, 371 U.S. 236, 242 (1963); *see also Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam).

Although subject matter jurisdiction is appropriate in this case, this Court must consider whether Abela's release from custody and the subsequent conclusion of his parole term render his appeal moot under Article III, § 2 of the United States Constitution. Where no actual case or controversy exists between the parties, or when "'events occur during the pendency of a litigation which render the court unable to grant the requested relief,'" then the case is moot and outside our jurisdiction. *Speer v. City of Oregon*, 847 F.2d 310, 311 (6th Cir. 1988) (quoting *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)). Because mootness is a jurisdictional issue, we may raise it *sua sponte* on appeal even though the issue was neither raised nor briefed below. *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993).

As long as a petitioner files a habeas petition attacking his underlying criminal conviction while incarcerated or in custody, even where he is later released before the petition is considered, he will satisfy the case or controversy requirement of Article III because of the continuing collateral consequences to a wrongful criminal conviction. *Spencer*, 523 U.S. at 8 (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)). These collateral consequences to a criminal conviction include an inability to enter certain businesses, to serve as an elected official or juror, or to vote. *See Carafas v. LaVallee*, 391 U.S. 234, 237-238 (1968).