**Henry FAHY,**

**v.**

**Martin HORN, Commissioner, Pennsylvania Department of Corrections; Conner Blaine, Jr., Superintendent of the State Correctional Institution at Greene, and; Joseph P. Mazurkiewicz,**

Superintendent of the State Correctional Institution at Rockview, Martin Horn; Conner Blaine, Jr.; Joseph P. Mazurkiewicz, Appellants.

No. 99–9007.

United States Court of Appeals, Third Circuit.

Argued July 19, 2000.

Filed Feb. 9, 2001.

Ronald Eisenberg (Argued), Office of the District Attorney, Philadelphia, PA, for Appellants.

Matthew C. Lawry (Argued), Billy H. Nolas, Kathy Swedlow, Defender Association of Philadelphia, Federal Capital Habeas Corpus Unit, Philadelphia, PA, for Appellee.

BEFORE: NYGAARD, McKEE, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The appellants in this capital case are Martin Horn, the Commissioner of the Pennsylvania Department of Corrections, Conner Blaine, Jr., the Superintendent of the State Correctional Institution at Greene, and Joseph P. Mazurkiewicz, the Superintendent of the State Correctional Institution at Rockview. We refer to these parties collectively as "the Commonwealth."

Appellee Henry Fahy was convicted of first degree murder in 1983 and sentenced to death. Fahy first appealed his conviction directly to the Pennsylvania Supreme Court, which affirmed the conviction and judgment of sentence. Fahy then filed a petition under Pennsylvania's Post Conviction Hearing Act, 42 Pa. Const. Stat. § 9541 (superceded and replaced by the Post Conviction Relief Act ("PCRA") in 1988), but he did not pursue this petition and it was dismissed.

In 1992, the Governor of Pennsylvania issued Fahy's death warrant. Fahy obtained a stay of execution from the Pennsylvania Supreme Court, which remanded the case to the Philadelphia Court of Common Pleas to consider whether trial counsel had been ineffective. The Court of Common Pleas rejected Fahy's claim after an evidentiary hearing, and the Pennsylvania Supreme Court upheld this decision.

The Governor then signed another death warrant. Fahy again obtained a stay from the Pennsylvania Supreme Court and filed a third state petition for collateral review. In this petition, Fahy claimed that he suffered from mental illness, that there should have been a competency examination before the penalty phase, and that his illness should have been a mitigating factor in his sentencing.

At this time, Fahy also requested a stay and filed a habeas petition in the United States District Court of the Eastern District of Pennsylvania, which was dismissed without prejudice for failure to exhaust state remedies. The District Court entered this order because the Pennsylvania Supreme Court had already entered a stay of execution.

The state PCRA court again denied relief after a hearing. Fahy appealed to the Pennsylvania Supreme Court, but then requested that this appeal be withdrawn. Fahy, represented by counsel, stated that he wished to waive all remaining appeals and collateral proceedings so that he could be promptly executed. The Pennsylvania Supreme Court remanded to determine whether Fahy fully understood the consequences of his request. Fahy appeared before the PCRA court where he requested and was granted one additional week to consider his request. In addition, Fahy was transferred to a different correctional institution to avoid alleged harassment from a guard. Fahy later affirmed his desire to waive his appeal and any remaining collateral relief. The Pennsylvania Supreme Court upheld this waiver.

On November 12, 1997, Fahy's counsel filed a fourth petition for state collateral relief. The PCRA court dismissed this petition because of its failure to set forth a prima facie case that a miscarriage of justice had occurred and because it was time-barred. The Pennsylvania Supreme Court affirmed, noting that the petition was untimely and that the court lacked jurisdiction to review it.

The Governor then issued another warrant of execution for Fahy, scheduling his execution for October 19, 1999. On October 13, 1999, Fahy's counsel filed a motion for stay of execution and an amended habeas petition in the District Court. On October 14, 1999, the District Court stayed the execution for a period of 120 days. The District Court further determined that the amended petition should be treated as a first, and not a successive, habeas petition because the first application was dismissed without prejudice.

The Commonwealth argued that the amended habeas petition was untimely, but

the District Court concluded that it was not time barred because both statutory and equitable tolling applied. Chief Judge Giles[1] stated that his decision would be subject to modification by Judge Shapiro, who would consider the matter within thirty-five days from the date of his order. Judge Shapiro extended the stay to allow the parties to brief the substantive issues of the petition. After considering the matter, Judge Shapiro agreed that Fahy's amended habeas petition was properly filed. The Commonwealth appeals this determination. We will affirm.

## I. Statutory Tolling

Three provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are relevant to Fahy's habeas petition. First, the AEDPA sets a statute of limitations period of one year to apply for a writ of habeas corpus challenging state court action. *See* 28 U.S.C. § 2244(d)(1); *Morris v. Horn*, 187 F.3d 333, 337 (3d Cir.1999). This period begins running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* However, the statute of limitations may be statutorily tolled during "[t]he time during which a *properly filed* application for State postconviction relief or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* (emphasis added). Second, § 2254 requires petitioners to exhaust their state court remedies "unless there is an absence of available corrective state process or state remedies are ineffective." *Morris*, 187 F.3d at 337; *see also Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); 28 U.S.C. § 2254(b)(1). Third, the AEDPA "severely limits the extent to which a federal habeas petitioner can file a 'second or successive' habeas petition." *Morris*, 187 F.3d at 338; *see also* 28 U.S.C. § 2244(b). The AEDPA statute of limitations can only

be statutorily tolled when a collateral petition for state relief was "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Morris*, 187 F.3d at 338 (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998)). Thus, in the AEDPA Congress set forth the requirement that only a *properly filed* petition for state collateral relief can toll the statute of limitations for filing a federal habeas petition, and in *Lovasz*, 134 F.3d at 146, we defined "properly filed" as being submitted in accordance with the state's procedural requirements. State petitioners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court. As the Ninth Circuit has stated, "[h]ad Congress intended to toll the statute of limitations for the period during which even improper applications were pending in state court, it would not have included the 'properly filed' limitation." *Dictado v. Ducharme*, 189 F.3d 889, 892 (9th Cir.1999).

Fahy argues that we must decide whether his state PCRA petition was "properly filed" as a matter of federal law and that the state court's determination of this issue is not binding on us. Fahy is correct that in applying a federal statute we must construe its terms as a matter of federal law. However, the AEDPA explicitly directs us to toll the statute of limitations only when a collateral petition for state relief was "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Morris*, 187 F.3d at 338. Therefore, to apply this statute as a matter of federal law we must look to state law governing when a petition for collateral relief is properly filed. The AEDPA requires us to interpret state law as we do

---

1. Under the Eastern District's procedures this matter would have been assigned to Judge Shapiro because she reviewed the initial ha-

beas petition, but the case was assigned to Chief Judge Giles because Judge Shapiro was unavailable at that time.

when sitting in diversity cases, and we therefore must defer to a state's highest court when it rules on an issue. Here the Pennsylvania Supreme Court has specifically ruled that Fahy's PCRA petition was not properly filed as a matter of state law. As a result, because final judgment in Fahy's case occurred on October 21, 1986, before the new habeas statute became effective on April 24, 1996, Fahy had one year from the statute's effective date to file his habeas petition. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998). The one year filing deadline thus expired well before Fahy filed his habeas petition in 1999. Fahy's petition was therefore not statutorily tolled because his PCRA petition was not properly filed.

## II. Equitable Tolling

Fahy delayed filing his federal habeas petition because he believed he was required to pursue a fourth petition for collateral relief in state court. At the time Fahy made this ill-advised choice, he reasonably believed that the state petition was properly filed. The Pennsylvania Supreme Court eventually disagreed, but the filing period for Fahy's federal habeas petition had run by the time the Court ruled. Fahy claims, and the District Court ruled, that the statute of limitations for filing his habeas petition should have been tolled to allow him to determine if he could maintain his state petition.

 We have explained that the one year filing deadline contained in 28 U.S.C. § 2244(d)(1) can be subject to equitable tolling

> only when the principle of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller v. New Jersey Dept. of Corr.*, 145 F.3d 616, 618 (3d Cir.1998). We later enumerated three circumstances permitting equitable tolling:

> if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

*Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

 In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling. *See Freeman v. Page*, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); *Taliani v. Chrans*, 189 F.3d 597 (9th Cir. 1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling); *Seitzinger v. Reading Hosp. and Medical Ctr.*, 165 F.3d 236 (3d Cir.1997) (finding that an attorney's deception, which caused a prisoner to miss the habeas filing deadline, merits equitable tolling); *Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity*, 16 F.3d 1386 (3d Cir.1994) (allowing time to toll because of the death of the petitioner's attorney). As the Supreme Court has repeatedly stated, however, "death is different." *See Caldwell v. Mississippi*, 472 U.S. 320, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) ("[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."); *Gardner v. Florida*, 430 U.S. 349, 357–58, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) ("[D]eath is a different kind of punishment from any other which may be imposed in this country.... It is of vital importance to the defendant and to the community that any decision to impose the death sen-

tence be, and appear to be, based on reason rather than caprice or emotion."). In a capital case such as this, the consequences of error are terminal, and we therefore pay particular attention to whether principles of "equity would make the rigid application of a limitation period unfair" and whether the petitioner has "exercised reasonable diligence in investigating and bringing [the] claims." *Miller*, 145 F.3d at 618.

■ If the limitation period is not tolled in this case, Fahy will be denied all federal review of his claims. Here the penalty is death, and courts must consider the ever-changing complexities of the relevant provisions Fahy attempted to navigate. Because the consequences are so grave and the applicable law is so confounding and unsettled, we must allow less than "extraordinary" circumstances to trigger equitable tolling of the AEDPA's statute of limitations when a petitioner has been diligent in asserting his or her claims and rigid application of the statute would be unfair. The subsequent question, therefore, is whether Fahy diligently and reasonably asserted his claims.

First, at the time Fahy filed his fourth PCRA petition Pennsylvania law was unclear on the operation of the new PCRA time limit. The Pennsylvania courts could have accepted Fahy's petition as timely because of its role within the capital case, *see Banks v. Horn*, 126 F.3d 206 (3d Cir. 1997), or could have found the government interference exception applicable. *See Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000). The law at the time of Fahy's petition was inhibitively opaque. Fahy filed his fourth PCRA petition in November, 1997, months before the Pennsylvania Supreme Court announced that it would no longer observe the relaxed waiver rule in *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998). Further, the Pennsylvania Supreme Court did not clarify that the state PCRA statute was jurisdictional and not waivable until 1999 in *Commonwealth v. Banks*, 556 Pa. 1, 726

A.2d 374 (1999). In *Banks*, 126 F.3d at 214, we rejected the Commonwealth's claim that a PCRA petition would be time-barred and required Banks to return to state court because we could not confidently determine that the state court would not apply the relaxed waiver rule it had applied in previous capital cases. If we could not predict how the Pennsylvania court would rule on this matter, then surely we should not demand such foresight from the petitioner. Fahy's misjudgment, therefore, was reasonable.

Second, it was also objectively reasonable for Fahy to believe that if he filed a § 2254 petition at the time he filed his fourth PCRA petition, the § 2254 petition would be dismissed as unexhausted. As we stated in *Banks*, at the relevant time we could not, "with confidence," predict the Pennsylvania court's position regarding procedural bars on unexhausted claims. *Banks*, 126 F.3d at 214. In light of this uncertainty, the changes wrought by the AEDPA, and our strong opinions regarding exhaustion, it was reasonable for Fahy to believe that a fourth petition was necessary.

■ If we refuse to equitably toll the statute, then we would deny this capital defendant federal review of his claims. Fahy diligently asserted his claims and the strategic choices he made during the appeal process were reasonable. When state law is unclear regarding the operation of a procedural filing requirement, the petitioner files in state court because of his or her reasonable belief that a § 2254 petition would be dismissed as unexhausted, and the state petition is ultimately denied on these grounds, then it would be unfair not to toll the statute of limitations during the pendency of that state petition up to the highest reviewing state court. We will therefore equitably toll the AEDPA's statute of limitations. We elect to exercise this leniency under the facts of this capital cases where there is no evidence of abuse of the process.

We therefore affirm the order of the District Court, albeit on equitable tolling grounds and not on statutory tolling grounds.