

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2007

# Rinaldi v. Gillis

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2101

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Rinaldi v. Gillis" (2007). *2007 Decisions*. Paper 422.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/422

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-2101

MICHAEL RINALDI,
Appellant

v.

FRANK GILLIS; THE DISTRICT ATTORNEY OF THE
COUNTY OF DELAWARE; THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 03-cv-01641)
District Judge: Hon. William H. Yohn, Jr.

Argued: September 27, 2006

Before: McKEE and AMBRO, *Circuit Judges*, and
RESTANI,[*] *Chief Judge, United States Court of International Trade*

(Opinion filed:   September 19, 2007)

MITCHELL SCOTT STRUTIN, ESQ. (Argued)
936 One Penn Center
1616 JFK Boulevard
Philadelphia, PA 19103
*Attorney for Appellant*

G. MICHAEL GREEN, ESQ.
District Attorney of Delaware County, Pennsylvania
A. SHELDON KOVACH, ESQ.

---

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation

1

Deputy District Attorney
Chief, Law and Appeals Unit
WILLIAM R. TOAL, III, ESQ. (Argued)
Assistant District Attorney
Delaware County Court House
201 West Front Street
Media, PA 19063
*Attorneys for Appellees*

OPINION

McKEE, *Circuit Judge.*

Michael Rinaldi, a state prisoner serving a life sentence for first degree murder, appeals from the district court's dismissal of the habeas petition he filed pursuant to 28 U.S.C. § 2254. The district court dismissed Rinaldi's § 2254 petition after finding that the claims he asserted under *Brady v. Maryland*, 373 U.S. 83 (1963), were procedurally defaulted. We will affirm the dismissal, but not for the reason stated by the district court. In our view, Rinaldi's § 2254 petition is time-barred under the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1).

## I. FACTS AND PROCEDURAL HISTORY

According to the Commonwealth, during the spring of 1980, Michael Rinaldi and Theodore J. DiPretoro discussed killing Edward J. Bianculli, Jr., on numerous occasions. The Commonwealth maintained that Rinaldi and DiPretoro each had his own reasons for killing Bianculli.

During the early evening of May 19, 1980, Rinaldi and DiPretoro went to

2

Bianculli's residence on three separate occasions. Each time, Rinaldi knocked on the door and told Bianculli's mother he had to see Bianculli. Later that evening, Rinaldi arranged with DiPretoro for DiPretoro to pick up both himself (Rinaldi) and Bianculli. Rinaldi, DiPretoro and Bianculli then drove to a secluded marsh in Tinicum Township, Delaware County, Pennsylvania, near the Philadelphia Airport. There, DiPretoro and Bianculli got out of the car and walked behind a group of tall weeds where DiPretoro shot and killed Bianculli. Rinaldi remained in the car during the shooting. DiPretoro and Rinaldi left the scene of the crime and drove to an area near the Schuykill River. Rinaldi then wiped the murder weapon to remove fingerprints and threw the gun into the river. Bianculli's body was discovered in December of 1980.

Two years later, DiPretoro began cooperating with the FBI regarding his knowledge of, and involvement in, mob-related killings in Philadelphia. DiPretoro admitted to participating in the mob-related murder of Phillip Testa, reputed "boss" of organized crime in Philadelphia. He also confessed to Bianculli's murder, and implicated Rinaldi in that crime. On June 18, 1982, Rinaldi was arrested and charged with the first degree murder of Bianculli.

At the ensuing jury trial in the Delaware County Court of Common Pleas, DiPretoro was the Commonwealth's chief witness against Rinaldi. DiPretoro testified that Rinaldi alone planned Bianculli's murder and that Rinaldi ordered him to kill Bianculli at the murder scene. DiPretoro also testified that he made a deal with the

3

Commonwealth in exchange for his testimony against Rinaldi, but asserted that he had no additional agreement with the prosecution regarding any other crimes – i.e, the murder of Phillip Testa in Philadelphia.  DiPretoro testified that, in return for testifying against Rinaldi, the Commonwealth had agreed: not to seek the death penalty for DiPretoro, not to oppose his application for commutation should he make such an application, and it had also agreed to place DiPretoro in the Federal Witness Protection Program.

Rinaldi testified in his own behalf at the trial. He admitted going to the marsh with DiPretoro and Bianculli.  However, he testified that he waited in the car while DiPretoro shot Bianculli, and that he did not know that DiPretoro was going to shoot Bianculli until after DiPretoro returned to the car.  Rinaldi also called six witnesses to testify to his good reputation.

The jury found Rinaldi guilty of first degree murder and conspiracy and on June 6, 1983, the state trial judge sentenced Rinaldi to life imprisonment for the murder plus a concurrent term of five to ten years for conspiracy.  The Pennsylvania Superior Court affirmed the trial court's judgment in an order dated January 25, 1985, and on September 22, 1987, the Pennsylvania Supreme Court denied his petition for allowance of appeal.

On November 18, 1982, prior to the Pennsylvania Supreme Court's denial of that petition,  DiPretoro pled guilty to Bianculli's murder.  On January 31, 1983, after Rinaldi's trial, a Delaware trial judge sentenced DiPretoro to life imprisonment for his involvement in the Bianculli murder. DiPretoro also pled guilty to the murder of Phillip

4

Testa in Common Pleas Court in Philadelphia County, and was sentenced to life imprisonment for his role that killing.

On August 25, 1994, Rinaldi filed his first petition for post-conviction relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. ANN. § 9541 *et seq.* On March 13, 1995, the PCRA court denied Rinaldi's petition pursuant to 42 PA. CONS. STAT. ANN. § 9543(b), based upon the court's conclusion that the nearly seven-year delay in filing it had prejudiced the Commonwealth.[1] The Pennsylvania Superior Court affirmed on June 26, 1996, and the Pennsylvania Supreme Court denied a petition for allowance of appeal on May 9, 1997.

On May 1, 1998, Rinaldi filed his first § 2254 habeas petition in the district court.[2] On March 21, 2000 that petition was dismissed because the district court found that 42 PA. CONS. STAT. ANN. § 9543(b) created an independent and adequate state procedural bar to consideration of the merits of Rinaldi's claims and Rinaldi had not established

---

[1] 42 PA. CONS. STAT. ANN. § 9543(b), allows a PCRA petition to be dismissed where delay in filing would prejudice the Commonwealth's ability to prosecute the case if relief were granted. Specifically, the PCRA court found that the Commonwealth would be unable to retry the case because all files relating to Rinaldi's case had been lost and neither the District Attorney nor Rinaldi's trial counsel had a sufficient recollection of the trial to reconstruct the files for a trial. *Commonwealth v. Rinaldi*, No. 3323-82, slip op. at 4, 5, 8. The PCRA court also found that Rinaldi failed to properly explain his delay in filing. *Id.* at 9.

[2] Rinaldi alleged (1) denial of due process because of the trial court's failure to instruct on accessory-after-the-fact; (2) ineffectiveness of counsel for counsel's failure to ask for that instruction; and (3) ineffectiveness of counsel for counsel's failure to call witnesses to impeach DiPretoro.

5

either cause and prejudice or actual innocence to overcome his procedural default. We declined to issue a certificate of appealability ("COA") on December 22, 2000.

In 1999, while Rinaldi's habeas petition was pending in district court, DiPretoro filed a PCRA petition in connection with his conviction for the murder of Phillip Testa in Philadelphia County. During an evidentiary hearing on that motion in July 1999, FBI agents and Philadelphia police officers testified about their conversations with DiPretoro relating to the Testa and Bianculli murders.

On September 9, 1999, Rinaldi filed a second PCRA petition. On October 19, 1999, the PCRA court notified Rinaldi of its intent to dismiss that petition without a hearing. That December, Rinaldi moved to supplement his pleadings with "newly discovered evidence," which he claimed to have learned after reading the Pennsylvania Superior Court's decision in DiPretoro's appeal from the PCRA proceedings in Common Pleas Court in Philadelphia. Based on that information, Rinaldi claimed that the Commonwealth had not disclosed inconsistent statements that DiPretoro made to investigators pertaining to the Bianculli murder. On February 29, 2000, the PCRA court dismissed Rinaldi's motion for newly discovered evidence and, on March 3, 2000, dismissed his second PCRA petition as untimely pursuant to 42 PA. CONS. STAT. ANN. § 9545(b), which imposes a one-year statute of limitations on PCRA petitions. Rinaldi appealed that order to the Pennsylvania Superior Court and the PCRA court issued its opinion on February 28, 2001.

6

On October 11, 2000, while the appeal of his second PCRA petition was pending in the state court, Rinaldi filed a *pro se* civil action in the district court pursuant to 42 U.S.C. § 1983 against, *inter alia*, the Delaware County District Attorney's Office and its officials, alleging that his due process rights had been violated by the Commonwealth's withholding of exculpatory evidence relating to his trial for Bianculli's murder. In addition to damages, Rinaldi sought discovery of documents in DiPretoro's criminal files that related to statements DiPretoro had made to the FBI and police officers in the course of the initial investigation of the Bianculli murder.

On February 13, 2001, the district court dismissed Rinaldi's § 1983 action against the Delaware County District Attorney's Office. However, on March 19, 2001, the district court ordered the Delaware County District Attorney to provide Rinaldi with DiPretoro's criminal files.

Rinaldi received the files from the Delaware County District Attorney's Office on April 19, 2001. According to Rinaldi, they revealed that DiPretoro initially denied his own involvement in Bianculli's murder and implicated an individual named, "Rocco Marinucci," as Bianculli's killer. However, two weeks later, DiPretoro confessed that he and Marinucci planned and executed the murder of Bianculli. DiPretoro's statements denying his involvement in the Bianculli murder and implicating Marinucci as the killer were made on May 24, and June 4, 5, 8, and 9, 1982. DiPretoro did not implicate Rinaldi in the Bianculli murder until June 10, 1982, when he made additional statements to the

7

FBI and the Philadelphia Police, and again on June 17, 1982 when he (DiPretoro) made additional statements to the Delaware County Police.

DiPretoro's statements in the files appeared to be inconsistent with DiPretoro's testimony at Rinaldi's trial where he swore that Rinaldi was involved in Bianculli's murder. Rinaldi also claims that the files revealed that there were letters from the Delaware County District Attorney to the Philadelphia County District Attorney relating to an agreement that the Commonwealth would stand mute on any future recommendations for DiPretoro's clemency relating to Bianculli's murder in exchange for DiPretoro's testimony against Rinaldi.

It is undisputed that the Delaware County District Attorney did not disclose these files, or the information in them, to Rinaldi prior to his trial. The Delaware County District Attorney's Office claims that it did not have any of these files in its possession or control at the time of Rinaldi's trial. It claims that it obtained the files for the first time from the Philadelphia County District Attorney in 1998, in preparation for DiPretoro's Delaware County PCRA proceedings.

Rinaldi presented this as evidence of a *Brady* violation in his brief to the Pennsylvania Superior Court.[3] However, on November 30, 2001, the Superior Court

_____

[3]In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." The Court has since held that the duty to disclose such evidence is applicable even though there has been no request by the
(continued...)

8

granted the Commonwealth's motion to strike this evidence because it was not included in the certified record.  On January 2, 2002, the Superior Court affirmed the PCRA court's dismissal of Rinaldi's second PCRA petition as untimely.

Rinaldi attempted to file a petition for allowance of appeal with the Pennsylvania Supreme Court, but failed to comply with the thirty-day filing deadline. *See* Pa.R.App.P. 1113(a).  Rinaldi claims that the Pennsylvania Attorney General's Office mislead his attorney and thereby caused him to file his petition late.  Specifically, he alleges that the Attorney General's Office mistakenly told Rinaldi's counsel that his petition for allowance of appeal should be filed with the Attorney General instead of the Prothonotary of the Supreme Court.  On February 1, 2002, on the eve of Rinaldi's

---

[3](...continued)
accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682.  Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).  In order to comply with *Brady*, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in this case, including the police." *Kyles*, at 437.

"[T]he term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence – that is, to any suppression of so-called '*Brady* material' – although, strictly speaking, there is never a genuine "*Brady*' violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.

9

deadline for filing his petition for allowance of appeal, the Attorney General's Office returned the petition to Rinaldi's counsel. Rinaldi's counsel then tried to file the petition with the Prothonotary of the Pennsylvania Supreme Court on February 5, 2002, but it was rejected as untimely. On February 7, 2002, Rinaldi's counsel filed an unopposed petition for leave to file the petition for allowance of appeal out of time, but the Pennsylvania Supreme Court denied it on April 30, 2002. Rinaldi claims that he was not aware of that denial until he received counsel's letter advising him of it on May 8, 2002.

On June 26, 2002, Rinaldi filed a third PCRA petition alleging a *Brady* claim. On December 9, 2002, the PCRA court denied the petition as untimely and Rinaldi appealed to the Pennsylvania Superior Court. On appeal, Rinaldi argued that his petition was not time-barred because the Commonwealth withheld the exculpatory evidence that provides the basis for his *Brady* claims. On May 13, 2004, the Superior Court ruled that even assuming that the Commonwealth withheld exculpatory evidence, 42 PA. CONS. STAT. ANN. § 9545(b) barred review because Rinaldi failed to file his third petition within sixty days of the date he received the alleged exculpatory evidence. Rinaldi argued that the sixty-day time limit should be tolled because the Pennsylvania Attorney General's Office interfered with his attempt to file a petition for allowance of appeal of his second PCRA petition. The Pennsylvania Superior Court refused to toll the sixty-day period because responsibility for properly filing an allowance of appeal lay with Rinaldi's counsel, not the Attorney General's Office. Rinaldi did not file a petition for allowance of appeal of

10

the Pennsylvania Superior Court's affirmance of the dismissal of his third PCRA petition.

Meanwhile, back in federal court, on March 18, 2003, while the appeal of his third PCRA petition that had been filed on June 26, 2002, was still pending, Rinaldi filed his second § 2254 habeas petition.[4] He alleged that the Commonwealth had violated *Brady* by failing to disclose exculpatory evidence and failing to correct DiPretoro's false testimony at trial. On July 21, 2003, the Commonwealth answered arguing that the § 2254 habeas petition should be dismissed because Rinaldi's third PCRA petition was still pending and, therefore, he had failed to exhaust his state remedies.

Rinaldi's second habeas petition was referred to a magistrate judge who filed her Report and Recommendation ("R&R") on December 29, 2003, before the Pennsylvania Superior Court issued its opinion affirming the PCRA court's dismissal of Rinaldi's third PCRA petition. Because the appeal of Rinaldi's third PCRA petition was pending, the magistrate judge recommended that the district court deny the petition because Rinaldi had failed to exhaust his claims in state court. In a footnote, the magistrate judge commented that Rinaldi's claims also appeared time-barred under 28 U.S.C. § 2244(d)(1).

On January 7, 2004, Rinaldi filed objections to the R&R and, on January 26, 2004, the Commonwealth submitted a brief in response to the objections. In their respective

---

[4]Before filing this petition, Rinaldi filed an application for authorization to file a second or successive habeas petition pursuant to 28 U.S.C. § 2244(b)(3)(A) on December 30, 2002. We issued an order authorizing the second filing on February 28, 2003.

filings, both Rinaldi and the Commonwealth addressed the timeliness of the petition for the first time. Rinaldi argued that his petition was timely and that the Commonwealth had waived its timeliness defense by failing to raise it in its answer. The Commonwealth contended that the petition was time-barred, that it had not been waived its timeliness defense, and that Rinaldi was not entitled to statutory tolling of the statute of limitations for federal habeas petitions.

The district court concluded that when the Pennsylvania Superior Court issued its opinion on May 13, 2004, holding that Rinaldi's third PCRA petition was not timely-filed, and when Rinaldi's opportunity to file a petition for allowance of appeal with the Pennsylvania Supreme Court had expired on June 12, 2004, Rinaldi had exhausted his state remedies thereby rendering the majority of the magistrate judge's R&R moot. At the district court's request, Rinaldi and the Commonwealth submitted supplementary briefs on the issue of procedural default.

On March 28, 2005, the district court issued a memorandum and order in which it concluded that Rinaldi's *Brady* claim was procedurally defaulted. It also found that Rinaldi had not shown "cause and prejudice" or a "fundamental miscarriage of justice" sufficient to excuse the default.[5] The district court did not address whether Rinaldi's habeas petition was time-barred. The district court also denied Rinaldi's request for a

_____

[5]Because the district court dismissed Rinaldi's habeas petition on procedural grounds, it did not decide whether there was an actual *Brady* violation.

12

COA.

However, we thereafter granted a Certificate of Appealability limited to the

following issues:

> [W]hether the District Court properly held that [Rinaldi's] *Brady* claim is
> procedurally defaulted because his second and third PCRA petitions were
> held untimely filed in state court. Assuming [Rinaldi] committed a
> procedural default, the parties shall address whether [Rinaldi] can show
> "cause and prejudice" or a "fundamental miscarriage of justice" to
> overcome the default. In addition, the parties shall address whether
> [Rinaldi's] habeas petition is time barred. *See* 28 U.S.C. § 2244(d).

## II. DISCUSSION

As the issues were framed in the COA, we would have to determine whether

Rinaldi's *Brady* claim, a claim that does not appear to be frivolous, was procedurally

defaulted. If it was, he would have to show either "cause and prejudice" or a

"fundamental miscarriage of justice" to overcome the default. However, we need not

undertake that inquiry because we conclude that his habeas petition is time-barred by the

one-year statute of limitations contained in AEDPA. 28 U.S.C. § 2244(d)(1). That issue

was included in the COA.

Rinaldi's petition is governed by AEDPA. *See Lindh v. Murphy*, 521 U.S. 320,

327 (1997) (AEDPA governs § 2254 habeas petitions filed on or after April 24, 1996).

As we noted earlier, AEDPA imposes a one-year statute of limitations on filing petitions

for federal habeas relief. 28 U.S.C. § 2244(d)(1). That statute requires a state prisoner to

file a federal habeas petition within one year of the latest of the following four dates:

13

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A) - (D).   However, the AEDPA statute of limitations is tolled for "the time during which a *properly filed* application for State post-conviction review or other collateral review with respect to the pertinent judgment or claim is pending. . . ."[6] 28 U.S.C. § 2244(d)(2) (emphasis added).   Because Rinaldi's conviction became final before the effective date of AEDPA, absent tolling, he had until April 23, 1997 to file a federal habeas petition. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998).  Rinaldi did not file this habeas petition until March 18, 2003, almost six years later.

Given the circumstances here, AEDPA's one-year clock began ticking on Rinaldi's claim on April 19, 2001; the day Rinaldi received the alleged *Brady* material from the Delaware County District Attorney's Office.  That was both "the date on which

---

[6]The limitations period for filing a federal habeas corpus petition is statutorily tolled under § 2242(d)(2) between the Pennsylvania Superior Court's ruling and the deadline for filing a timely request for allowance of appeal to the Pennsylvania Supreme Court, even if a timely request for allowance of appeal is not filed.  *Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000).

14

the impediment to filing an application created by State action in violation of the Constitution or laws of the United States [was] removed" and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(B), (D).   Consequently, Rinaldi had one year from April 19, 2001 to file a habeas petition, under the statute.

Because his appeal from the PCRA court's dismissal of his second PCRA petition was pending in the Pennsylvania Superior Court, he could not file a third PCRA petition when he received the alleged *Brady* material on April 19, 2001.  *See Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) ("When an appellant's appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review.").   However, on January 2, 2002, the Pennsylvania Superior Court affirmed the PCRA court and dismissed Rinaldi's second PCRA petition as untimely.   The time to seek discretionary review of that order in the Pennsylvania Supreme Court expired on February 1, 2002.  Rinaldi failed to file a petition for allowance of appeal with the Pennsylvania Supreme Court within that thirty-day filing deadline.  *See* Pa.R.App.P. 1113(a).

The PCRA provides, *inter alia*, that a "petition . . . including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that: (1) the failure to raise the claim

15

previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States. . . ." 42 PA. CONS. STAT. ANN. § 9545(b)(1)(I). The PCRA further provides that "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 PA. CONS. STAT. ANN. § 9545(b)(2).

When the time for seeking discretionary review in the Pennsylvania Supreme Court expired on February 1, 2002, Rinaldi's claim of governmental interference based on a failure to disclose the alleged *Brady* material "could have been presented" in a third PCRA petition. He thus had 60 days from that date to file a third PCRA petition, i.e., until April 2, 2002. However, he did not file his third PCRA petition, in which he formally presented his *Brady* claim, until June 26, 2002, after the 60 day period expired.

Because his third PCRA petition was not filed within sixty days of April 2, 2002, the PCRA court denied the petition as untimely, and that denial was affirmed by the Pennsylvania Superior Court on May 13, 2004. Rinaldi's opportunity to seek review of that order in the Pennsylvania Supreme Court expired on June 12, 2004.

Rinaldi filed the instant habeas petition on March 18, 2003, while his appeal of the denial of this third PCRA petition was pending in the state court. However, because Rinaldi's second PCRA petition, in which he attempted to raise his *Brady* claim, and his third PCRA petition, in which he formally presented his *Brady* claim, were found by state

16

courts to be untimely under state law pursuant to 42 PA. CONS. STAT. ANN. § 9545(b), they were not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). *Pace v. Diuglielmo*, 544 U.S. 408, 417 (2005).[7] Therefore, because Rinaldi had one-year from April 19, 2001 to file his habeas petition, and because he is not entitled to statutory tolling under § 2244(d)(2), this habeas petition, filed on March 18, 2003, is time-barred under AEDPA.

Although the district court did not directly address the issue, Rinaldi contends that the district court erred when it dismissed his habeas petition because equitable tolling applies to the limitations period. "The statute of limitations for federal habeas corpus petitions is subject to two tolling exceptions: (1) statutory tolling during the time a 'properly filed' application for state post-conviction review is pending in state court and (2) equitable tolling, a judicially crafted exception."[8] *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003) (citation and internal quotations omitted). "Equitable tolling is available only when the principle of equity would make the rigid application of a

---

[7]Although the Supreme Court decided *Pace* after the state proceedings here were concluded, we had already held that when the state court deems a PCRA petition untimely filed, it is not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2). *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003); *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001).

[8]In *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616 (3d Cir. 1998), we held that AEDPA's one-year filing requirement is a statute of limitations, not a jurisdictional rule, and, therefore the period of limitation is subject to equitable tolling. We note, however, that the Supreme Court has "never squarely addressed . . . whether equitable tolling is applicable to AEDPA's statute of limitations." *Pace v. Diuglielmo*, 544 U.S. 408, 418 n.8 (2005).

17

limitation period unfair." *Id.* at 168 (citation and internal quotations omitted).

There are two general requirements for equitable tolling: "(1) that the petitioner has in some extraordinary way been prevented from asserting his or her rights; and (2) that the petitioner has shown that he or she exercised reasonable diligence in investigating and bringing the claims." *Id.* (citation and internal quotations and brackets omitted).

In support of his claim that he is entitled to equitable tolling, Rinaldi argues:

> The exculpatory materials were finally released on April 19, 2001 after Rinaldi sued the prosecutor in federal district court. As soon as Rinaldi received the material, he presented it in the then-pending Superior court appeal of the denial of this second PCRA petition. The material, however, was stricken by the Superior Court. This appeal was finally decided on February 1, 2002, when the time to file an *allocatur* petition on the second PCRA petition expired. This period of time, from April 19, 2001, until February 1, 2002, should be subject to equitable tolling since reasonable diligence was observed, Rinaldi was actively misled, material was withheld from him, and Rinaldi was barred from filing a third PCRA until the second PCRA was disposed of.

Rinaldi's Br. at 55. According to Rinaldi, because the one-year limitations period should be tolled from April 19, 2001, until February 1, 2002, he had until February 1, 2003 to file his habeas petition. He further argues that he is entitled to an additional period of equitable tolling from December 30, 2002, when he filed his application to file his second habeas petition, until February 28, 2003, when we granted that application. In Rinaldi's view, these two periods of time during which he contends he is entitled to equitalble tolling, bring his March 18, 2003 habeas petition within AEDPA's one-year limitations

18

period.

There are a number of problems with this argument. First, Rinaldi simply claims that "reasonable diligence was observed." He does not even attempt to describe how he exercised any diligence at all. Second, his claim that he was actively misled, presumably by the Attorney General's Office, strains credulity. Rinaldi was not then represented by present habeas counsel, an exceptionally talented and experienced appellate attorney. However, he was represented by an attorney who was a former District Attorney of Philadelphia County. Certainly, if anyone knew where to file the petition, it was his attorney at that time.[9] Pa.R.App.P. 1113(a) clearly requires that subject to certain exceptions not applicable here, a petition for allowance of appeal must be filed with the Prothonotary of the Supreme Court, not the Attorney General. Moreover, even assuming *arguendo* that prior counsel was unaware of the proper place to file the petition for allowance of appeal, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (citations omitted).

Third, his claim that the alleged *Brady* material was withheld does not entitle him to any period of equitable tolling because we agree that AEDPA's one-year clock did not

---

[9] We realize, of course, that it was not that attorney who tried to file the petition, but an assistant working in his office. However, that can not change our analysis given the pertinent principles of agency and professional responsiblity

19

begin ticking until the day he received the alleged *Brady* material. Therefore, the fact that the Delaware County District Attorney did not disclose that material until April 19, 2001, does not affect his ability to file timely PCRA petitions or a timely habeas petition.

Fourth, Rinaldi would not have been able to file a proper habeas petition in any event because he had not yet exhausted his *Brady* claims in state court. In that regard, Rinaldi claims that he was unable to file a timely third PCRA petition because his counsel did not advise him until May 8, 2002, that the Pennsylvania Supreme Court had denied his petition for leave to file a petition for allowance of appeal on April 30, 2002.[10] However, as noted above, in a non-capital case, attorney error and other mistakes are not the extraordinary circumstances required for equitable tolling.

More importantly, however, we do not believe that Rinaldi can possibly demonstrate that he was "in some extraordinary way . . . prevented from asserting his rights" or that he "has shown that he . . . exercised reasonable diligence in . . . bring his" *Brady* claim. Rinaldi received the alleged *Brady* material from the Delaware County District Attorney on April 19, 2001. As we have already held, that is the date that the limitations period began to run. Therefore, under AEDPA's limitations period, 28 U.S.C. § 2244(d)(1), he had one year from April 19, 2001 to file a habeas petition asserting his *Brady* claim. However, he could not file a third PCRA petition to assert (and exhaust) his *Brady* claim because his appeal from the PCRA court's dismissal of his second PCRA

---

[10]As noted earlier, Rinaldi had until April 2, 2002, to present his *Brady* claim in a third PCRA petition. However, he did not file a third PCRA petition until June 26, 2002.

20

petition as untimely was pending in the Superior Court at the time he received the *Brady* material on April 19, 2001. However, on January 2, 2002, the Superior Court affirmed the PCRA court's dismissal of his second PCRA petition as untimely. And, the time to seek discretionary review in the Pennsylvania Supreme Court of the Superior Court's order affirming the PCRA court's dismissal of his second PCRA petition because it was untimely expired on February 1, 2002.

Significantly, as of February 1, 2002, AEDPA's one-year limitations period had not yet completely run. He still had about one-and-one half months to file a timely habeas petition, i.e., until April 18, 2002. Admittedly, he still had to exhaust his *Brady* claim. But he had until April 2, 2002 (60 days after the time for seeking allocatur expired), to file a timely third PCRA petition. Had he filed his third PCRA petition any time prior to April 2, 2002, his PCRA petition would have been timely and, therefore, "properly filed" pursuant to 28 U.S.C. § 2244(d)(2). Therefore, he would have been entitled to statutory tolling during the pendency of his third PCRA proceeding. That means that he would still have had one-and-one-half months left to file a timely § 2254 habeas petition upon the conclusion of his third PCRA proceedings. However, he did not file a third PCRA petition formally presenting his *Brady* claim until June 26, 2002, past the time for a timely third PCRA petition to be filed, i.e., April 2, 2002.

As noted above, Rinaldi asserts a number of reasons why he should be entitled to equitable tolling. However, had he filed a timely third PCRA petition, he could have

21

filed a timely habeas petition.[11]   Therefore, because Rinaldi could have filed a timely habeas petition, the reasons he gives for saying he is entitled to equitable tolling have no validity.

### III.  CONCLUSION

Regrettably, in the final analysis, what we have here is a very serious allegation that a prosecutor failed to disclose *Brady* material in a murder prosecution; material that may have been highly relevant to cross-examining the only witness whose testimony could unequivocally establish that the defendant was a cold-blooded killer.

We realize, of course, that Rinaldi's habeas petition is not based on a claim of actual innocence, and that the merit of Rinaldi's claim has never been established.  We also realize that it is possible that any *Brady* violation that may have occurred here could have resulted from inadvertence rather than deliberate prosecutorial misconduct intended to secure a conviction.  However, inadvertence would not excuse a *Brady* violation.  *See Strickler v. Greene*,  527 U.S. 263, 282 (1999). [12]

---

[11] Moreover, we know of no reason why Rinaldi could not have asked the Pennsylvania Supreme Court to dismiss his second PCRA without prejudice so he could properly include his *Brady* claim in a third PCRA once the materials were disclosed. That would have allowed him to exhaust in state court in time to file a timely habeas in federal court.  Furthermore, even if the Superior Court denied his request or dimissed the second PCRA petition with prejudice, Rinaldi would have been on far firmer footing arguing the diligence that is required to equitably toll the period of time the second and third PCRA petitions were pending.

[12] It is, of course, true that DiPretoro's prior statements contradict Rinaldi's trial testimony since Rinaldi admitted that he was in the car with Bianculli.  We are

(continued...)

22

Thus, even though evidence that appears to have been relevant to impeaching the prosecution's main witness in a murder trial may not have been disclosed as required by law, Rinaldi has not been able to have a single court review the merits of his *Brady* claim. The concern is only exacerbated by the fact that the Delaware County District Attorney's Office saw fit to oppose Rinaldi's attempt to have the Superior Court consider the alleged *Brady* material during the appeal of the denial of his second PCRA petition because the material was not part of the certified record. This, even though the material had been obtained from that same District Attorney's Office. We are reminded of the Supreme Court's explanation of the duty of prosecutors:

> [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88 (1935). Although the Court was there referring the United States Attorney, the statement applies to local prosecutors as well. We realize that the District Attorney did not oppose Rinaldi's February 7, 2002, petition to the Pennsylvania Supreme Court for allowance of appeal out of time, but Rinaldi's appeal of the dismissal of his second PCRA had already been dismissed at that point.

Thus, this appeal is yet another example of the procedural minefield that awaits

---

[12](...continued)
nevertheless concerned that statements that may have undermined DiPretoro's credibility were not disclosed as may have been required for Rinaldi's trial.

any attorney attempting to navigate AEDPA's terrain and obtain federal habeas review of a state court proceeding.  Nevertheless, given the time limitations set forth in AEDPA, and the procedural history here, we have no alternative but to affirm the district court's denial of Rinaldi's § 2254 petition for the reasons we have set forth above.

_____